UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG


LOIS KING,

      Movant,

v.                         Case No. 6:04-cr-00127-8
                           Case No. 6:07-cv-00447

UNITED STATES OF AMERICA,

      Respondent.


<u>PROPOSED FINDINGS AND RECOMMENDATION</u>

Pending before the court are Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed on July 19, 2007 (docket # 546), and her Motion for Modification of Sentence pursuant to 18 U.S.C. § 3582, filed on November 16, 2007 (## 578, 584). Lois King (hereinafter "Defendant") has served a 41 month sentence imposed on April 25, 2005, following her conviction by a jury of engaging in a conspiracy with her son, Kirt R. King, to launder money, in violation of 18 U.S.C. § 1956(h). (Judgment entered April 27, 2005, # 351.) She is currently serving a three year term of supervised release. Defendant's direct appeal was unsuccessful. <u>United States v. King</u>, No. 05-4501, 199 Fed. Appx. 250 (4th Cir. July 20, 2006).

Defendant's § 2255 Motion is supported by a memorandum (# 547) and by exhibits (# 547-2). Grounds six and seven were amended with supplemental authority (# 551). The United States responded in

opposition (# 564), and Defendant submitted a reply (# 577).

## Facts of the Case

The Fourth Circuit's decision affirming Defendant's and co-defendant Nathan Hughes's convictions and sentences provides a brief synopsis of the government's evidence against Defendant:

> The charges arose in 2001 when the Drug Enforcement Administration and the Parkersburg Narcotics Violent Crimes Task Force ("Task Force") began an undercover investigation into cocaine trafficking in Wood County, West Virginia, targeting various individuals in the Parkersburg area including Appellant Hughes, as well as Kirt King and others. [Footnote: The Government introduced evidence at trial that Kirt King and Mario Mason joined forces to purchase cocaine from Columbus, Ohio, process it, and then resell it in the Parkersburg, West Virginia area. Testimony as to the amounts of cocaine purchased, processed, and redistributed by the conspiracy members was introduced by a number of witnesses.] * * *

> With respect to Lois King, the Government alleged that they found 116.5 grams of cocaine in Kirt King's residence, worth $26,000, and that Lois King, Kirt King's mother, owned the residence. Mario Mason testified that Kirt King would give large amounts of cash to Appellant King, and that he and Kirt King used the residence to store and prepare for resale cocaine they had purchased from sources in Columbus, Ohio. He further testified that Appellant King was in the residence during the time he and Kirt King used it to process cocaine. Mason attested that Appellant King was involved in taking the drug money she received from her son and putting it in assets, such as houses and cars. The Government presented additional evidence that Appellant King acquired and paid the land contract on one residence with a lump sum payment of $14,580 in cash, and that another property was purchased for $21,000, deeded, and being paid for by Appellant King, despite her lack of financial resources (as reported in her income tax records).

Hughes, 199 Fed. Appx. at 251-52. One of the issues raised by Defendant on appeal concerned her attorney's performance.

2

King's final challenge on appeal is that her retained trial counsel rendered ineffective assistance. She asserts that her attorney's continuing disregard for the judge's instructions not to thank him regarding his trial rulings, his disregard for the judge's instruction not to inquire into details of pending charges relative to a Government witness, and his use of a pejorative relative to an Assistant United States Attorney in the presence of a juror prejudiced her case.  She further claims that her attorney was admonished by the district court five times for statements he made during his opening statement, that he failed to present a defense on her behalf, that his questions on direct examination were met with repeated objections by other attorneys, and that his cross-examination of Government witnesses lacked all "rhythm or craft."

King's claim of ineffective assistance of counsel must be brought in a collateral proceeding under 28 U.S.C. § 2255 (2000), unless it conclusively appears from the face of the record that her counsel was ineffective. *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991).  Because the record does not conclusively establish ineffective assistance of counsel, we decline to consider this claim on direct appeal.

Id., at 253.

### Grounds for Relief

Defendant raises the following eleven grounds for relief:

A.  Ground one: Constructive amendment of the indictment and ineffective assistance of counsel.  The government and the Court constructively amended the indictment by removing an essential element of the offense returned by the grand jury; Petitioner's counsel failed to challenge this due process violation.

B.  Ground two: Ineffective assistance of counsel, due to counsel's failure to challenge the willful blindness jury instruction.  The government and the Court improperly gave a "willful blindness" instruction which removed an essential element of the offense and reduced the government's burden of proof; Petitioner's counsel, however, failed to challenge this improper instruction and amendment.

3

C. Ground three: Ineffective assistance of counsel, due to counsel's failure to challenge the sufficiency of the evidence on appeal.  The evidence was insufficient to sustain Petitioner's conviction; Petitioner's counsel, however, failed to raise this issue on appeal.

D. Ground four: Ineffective assistance of counsel, due to counsel's failure to properly argue Petitioner's motion to sever trials.  Counsel filed a motion to sever Petitioner's trial.  However, counsel failed to properly argue the spill-over effect and the need for Petitioner's co-defendant to testify, even though counsel was asked to do so.

E. Ground five: Prosecutorial misconduct and ineffective assistance of counsel.  The government committed prosecutorial misconduct by prosecuting Petitioner solely because Kirt King refused to enter a plea agreement with the government; Petitioner's counsel know of this misconduct but failed to bring it to the attention of the Court.

F. Ground six: Denial of Petitioner's right to testify and ineffect[ive] assistance of counsel.  Petitioner's counsel would not allow her to testify even though she repeatedly requested to be allowed to do so.  In fact, counsel threatened to quit unless Petitioner followed his instructions to not testify.

G. Ground seven: Ineffective assistance of counsel, due to counsel's failure to investigate, interview, present evidence, and call witnesses prior to and during trial. Petitioner had evidence of her innocence and asked counsel to present that evidence in her defense; Petitioenr also asked counsel to interview persons that would authen[t]icate her evidence and to call those persons as witnesses; Petitioner's counsel, however, failed to do so even though this evidence and testimony would have resulted in Petitioner's acquittal.

H.  Ground eight: Actual innocence.  As seen by the evidence (Exhibits 2-18) presented in Ground Seven, Petitioner is actually and factually innocent of Count Sixteen.

I. Ground nine: <u>Brady</u> violation by the government, and ineffective assistance of counsel, due to counsel's failure to challenge the <u>Brady</u> violation.  The government

seized all of Petitioner's financial records during the
June, 2004 search of her home.  However, Petitioner's
records for the years 1999 and 2000 were apparently lost
by the government, according to Petitioner's counsel.
Counsel, however, failed to make this known to the Court.

J.  Ground ten: Violation of Petitioner's due process
rights due to counsel's failure to file for a petition
of certiorari to the Supreme Court, or to notify Petitioner
that he was not going to file.  Petitioner asked counsel
to file a petition for writ of certiorari to the Supreme
Court.  Counsel, however, failed to file and failed to
notify Petitioner (or the Fourth Circuit) that he was not
going to file, thereby preventing Petitioner from filing
on her own.

K.  Ground eleven: Sentence imposed in violation of
Petitioner's Fifth and Sixth Amendment rights/ineffective
assistance.  Petitioner's sentence was enhanced based on
facts not included in the indictment, submitted to the
jury, or admitted to by Petitioner, thereby violating her
5th and 6th Amendment rights under <u>Blakely</u>, <u>Booker</u>, and
<u>Cunningham</u>.  Petitioner's counsel, however, failed to
raise this challenge at the district level or on appeal.

(# 546, at 4-5, 7-8.)

By Order entered May 8, 2009 (# 619), Defendant was asked if
she wished to pursue all her grounds for relief in her § 2255
motion and her § 3582 motion.  Defendant responded that she wishes
to continue with all grounds for relief raised in her § 2255
motion, but that "there is no reason to continue the 3582 motion to
modify my sentence for a compassionate release, being that I have
already been released from prison" (# 622).  Accordingly, it is
respectfully **RECOMMENDED** that Defendant's § 3582 motion (# 578) be
denied as moot.

### Ineffective Assistance of Counsel

All but one (ground eight) of Defendant's grounds for relief

alleged that she was denied effective assistance of counsel.  The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  Id., at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  Id., at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id., at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  Id., at 697.  The undersigned will address

6

Defendant's grounds for relief in light of the <u>Strickland</u> standard.

**Ground one - Constructive amendment of the indictment**

Count Sixteen of the superceding indictment (# 105, at 17-23) was the only charge faced by Defendant.  It alleged that she and her son, Kirt King, engaged in money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii).  Section 1956(a)(1)(B) sets forth two alternative crimes as follows:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
> * * *
> (B) knowing that the transaction is designed in whole or in part –
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; **or**
> (ii) to avoid a transaction reporting requirement under State or Federal law.

[Emphasis added.] Count Sixteen alleged particular transactions which were charged as concealing the proceeds of cocaine trafficking (titling real estate and motor vehicles in Lois King's name), and one transaction as avoiding a transaction reporting requirement (splitting a deposit between cash and a check to avoid the filing of a currency transaction report).

At the close of the government's case, Defendant's attorney, David Perry, made a motion pursuant to Rule 29, *Fed. R. Crim. P.* (Tr. Trial, # 305-5, at 243-47.)  The court remarked, "I don't see any evidence of structuring here."  <u>Id.</u>, at 249.  Assistant U.S.

Attorney ("AUSA") Arnold agreed, and stated, "the United States does not mind if the Court wants to strike those portions relating to structuring." Id., at 249-50.  Chief Judge Goodwin denied the motion, "except as to the allegation of structuring." Id., at 250. In other words, Chief Judge Goodwin struck from the indictment any allegation that Defendant had engaged in a violation of 18 U.S.C. § 1956(a)(1)(B)(ii), avoiding a transaction reporting requirement, leaving only the charge of concealing proceeds of an unlawful activity.

In United States v. Perry, 560 F.3d 246 (4th Cir. 2009), the court addressed an argument similar to that raised by Defendant. In Perry, the defendant argued that the district court constructively amended the indictment.   The Fourth Circuit disagreed.

It is well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive.  [Citations omitted.]

The same holds true in the instant case.   The indictment charged both predicate offenses, placing Perry on notice of the specific charges against him. * * * The instruction did not broaden the possible bases for conviction beyond those presented in the indictment, nor change the elements of the offense charged so as to result in Perry being convicted of a crime different from that charged in the indictment.   Accordingly, the district court's disjunctive instruction as to the predicate offenses did not result in a constructive amendment of the indictment . . ..

560 F.3d at 256.

In Defendant's case, the indictment charged two different

8

violations in the conjunctive ("and"): "to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the unlawful sale and distribution of controlled substances, **and** to avoid a transaction reporting requirement under State or Federal law, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) **and** (ii)." (# 105, at 17.)  The statute is worded in the disjunctive ("or"): "(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; **or** (ii) to avoid a transaction reporting requirement under State or Federal law."  Thus Defendant was on notice of both charges against her, but the government was only required to prove one of the charges.  When Chief Judge Goodwin struck the references to structuring and the alleged violation of § 1956(a)(1)(B)(ii), he <u>narrowed</u> (not broadened) Count Sixteen, and he did not eliminate any essential element of the remaining charge of § 1956(a)(1)(B)(i).  Thus there was no constructive amendment of the indictment, and Defendant was not prejudiced thereby.

Defendant's argument in her reply that the government was required to prove both violations in Count Sixteen (# 577, at 4) is simply in error and violates the maxim of "charge in the conjunctive - prove in the disjunctive" which is confirmed in <u>Perry</u>.

The Fourth Circuit addressed this argument concerning the alleged constructive amendment to the indictment in the direct

9

appeal of Defendant's son, Kirt King.

> While King is correct that the district court allowed the Government to redact that portion of the indictment regarding the illegal structure of financial transactions, that portion was a small part of the "Manner and Means of the Conspiracy" section of the indictment, and did not affect the elements of money laundering. King has not alleged, nor have we found, any prejudice as a result of the redaction of the language related to structuring, and we find that the evidence presented at trial did not alter the crime charged in the indictment, but rather effected a mere variance, which did not violate King's constitutional rights. *See United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). As the essential elements of the money laundering count were not affected by the redaction, the district court's decision to allow the redaction was not a constructive amendment of the indictment and thus, did not broaden the possible bases for conviction beyond those charged by the grand jury. Hence, King's claim is without merit.

United States v. King, No. 05-4672, 239 Fed. Appx. 852, 856 (4th Cir. Sept. 10, 2007).

The undersigned proposes that the presiding District Judge **FIND** that Defendant's first ground for relief is without merit, she suffered no prejudice, and thus she cannot satisfy the second prong of the Strickland test.

### Ground two - Willful blindness instruction

Defendant argues that it was plain error for Chief Judge Goodwin to have given a willful blindness instruction because the government did not prove Defendant's knowledge of the specified unlawful activity. (# 547, at 12.) She contends that a willful blindness instruction is inconsistent with the essential elements of § 1956(a)(1)(B)(i), as charged to the jury, that "the

10

conspirators knew that property represented the proceeds of the distribution of cocaine;" and "the conspirators engaged in the financial transaction with the intent to conceal, disguise, and promote the carrying on of distribution of cocaine." (# 306-2, at 82.)

The willful blindness instruction was read to the jury as follows:

> If you find that a defendant was willfully blind to the source of the proceeds of the alleged unlawful activity, then you may find the defendant had knowledge of the source of the proceeds of the alleged unlawful activity.
>
> I want to emphasize again in terms of the charge in Count Sixteen that you may not infer guilt of a defendant solely on the basis of his or her presence at the scene of the crime, his or her proximity to illegal activity, or his or her association with a person engaging in illegal activity.
>
> The Government must prove beyond a reasonable doubt that a defendant in Count Sixteen knowingly and intentionally, as I defined those, committed the crime knowingly and intentionally as I defined those terms earlier.

Id., at 83-84.

The government's response merely asserts that Defendant was convicted based on overwhelming evidence (# 564, at 7). In reply, Defendant contends that the willful blindness instruction amounted to an instruction that the jury should assume Defendant's knowledge. (# 577, at 5.)

Defendant's son raised an issue on direct appeal as to the willful blindness instruction relative to the knowledge of his

11

mother, Lois King, of the illegal nature of the funds involved in the money laundering conspiracy.  *King*, 239 Fed. Appx. at 856.  The Fourth Circuit found no error in the instruction.

> King misconstrues the law for willful blindness, and its applicability to this case.  The element of knowledge in the crime of conspiracy may be satisfied by a showing that a defendant acted with willful blindness, as willful blindness is a form of constructive knowledge which "allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him."  *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991).  Because willful blindness serves as a proxy for knowledge, there is nothing inconsistent in the determination that a defendant knowingly was part of a conspiracy even where willfully blind to the conspiracy's existence and purpose.  *See United States v. McIver*, 470 F.3d 550, 563-64 (4th Cir. 2006).  Hence, we find no abuse of the district court's discretion in granting the willful blindness instruction with regard to Lois King, even assuming, *arguendo*, that the Government failed to prove actual knowledge, nor was there any inconsistency in giving the willful blindness instruction to the jury and allowing the conspiracy charge against King to go to the jury.

Id., at 856-57.

The Fourth Circuit having ruled that the willful blindness was appropriate, the undersigned proposes that the presiding District Judge **FIND** that Defendant's second ground for relief is without merit, she suffered no prejudice, and thus she cannot satisfy the second prong of the Strickland test.

### Ground three: Sufficiency of the evidence

Defendant contends that the evidence was insufficient to convict her, and that her attorney was ineffective because he did not raise sufficiency of the evidence as a ground on appeal.  (#

12

547, at 13-16.  This argument is based on the willful blindness instruction, asserting that the instruction removed the essential element of knowledge from the government's burden of proof.  Id., at 15.

The United States responded as follows: "With respect to the failure to argue the sufficiency of the evidence, it is obvious from the appellate record that counsel assessed the case and then argued the only grounds he felt would be meritorious."  (# 564, at 11.)

Defendant's reply disparages the government's response and claims that a sufficiency of the evidence argument on appeal would have been sustained due to the lack of proof of her knowledge as to the source of the proceeds of cocaine trafficking.  (# 577, at 7.)

Kirt King raised on appeal a claim that Chief Judge Goodwin erred in denying his Rule 29 motion as to Count Sixteen, money laundering.  Like his mother, King based his claim on "the perceived inconsistency between the district court's grant of the willful blindness jury instruction for Lois King and the element of knowledge required to establish a conspiracy."  King, 239 Fed. Appx. at 857.  The Fourth Circuit ruled that his claim had no merit, for the reasons set forth with respect to the willful blindness instruction.  Id.

The Fourth Circuit having ruled that the evidence was sufficient to justify the giving of the willful blindness

instruction, the undersigned proposes that the presiding District Judge **FIND** that Defendant's third ground for relief is without merit, she suffered no prejudice, and thus she cannot satisfy the second prong of the Strickland test.

### Ground four: Severence

In this claim, Defendant states that her attorney filed a motion for severance, but that Chief Judge Goodwin never ruled on it. (# 547, at 17.)  She asserts that Mr. Perry was ineffective because he did not properly present and argue the severance motion, and that Herbert L. Hively, Jr., her appointed appellate counsel, was ineffective because he did not raise the matter on appeal. Id. She claims that she was prejudiced by the spillover effect from her co-defendants, particularly her son, Kirt King, who was charged as her co-conspirator. Id., at 18. Defendant argues that the wealth of evidence against Kirt King led the jury to infer to her knowledge of the source of the money. Id., at 19. Finally she claims that Kirt King offered to testify on Defendant's behalf, but that Mr. Perry did not raise this issue before Chief Judge Goodwin.

The United States failed to respond to this claim, which omission was duly noted by Defendant (# 577, at 8).

Mr. Perry filed a motion for severance on October 28, 2004 (# 154), and a memorandum in support (# 155).  His motion notes that a co-defendant's testimony might be necessary to exculpate Defendant but would not be available with a joint trial. (# 154,

14

at 2.)   The memorandum argues that very little of the massive discovery from the United States pertained to Defendant, thus increasing the likelihood of spillover.  (# 155, at 2-3.)   It contends that the out-of-court statements by certain co-defendants may be admissible and implicate Defendant, but that the declarant may not testify.   Id., at 4.   The government responded in opposition to the motion (# 164).

Defendant is correct that the docket sheet does not reflect a written order disposing of the motion.  The undersigned contacted the court reporter of the hearing on pretrial motions which took place before Judge Goodwin on November 4, 2004 (# 174).  She provided the following excerpt from the hearing:

> THE COURT: Motion to sever is denied.  The factors dictate a joint trial.  The specified unlawful activity underlying the charge against your client is, in fact, the, according to the Government's proffer, the very evidence that they're going to introduce against the other defendants.
>
> I can hear your jury arguments fine.  And certainly there may be cautionary instructions at some point you may wish to ask for.  But there is no danger of unfair prejudice that's been shown to me that would justify severance in this case.

It is well-established that defendants indicted together should be tried together, especially in conspiracy cases.  United States v. Harris, 498 F.3d 278, 291 (4th Cir. 2007).  As Judge Goodwin noted, the money laundering count related to the same specified unlawful activity which Kirt King was charged with committing.

15

Defendant complains that Mr. Perry did not advise the court that Kirt King would exculpate his mother if he testified at a separate trial.  The court notes that Kirt King attempted to plead guilty to the indictment on November 30, 2004, and informed Judge Goodwin that he wished to exonerate his mother.

> THE DEFENDANT: * * * But I did not launder no money with my mother.  That's what this whole case is about, her property. * * *
>
> THE COURT: Did you take the proceeds of your drug dealing and engage in financial transactions like buy things for the house or put money in financial institutions or anything like that?
>
> THE DEFENDANT: I did without her knowledge or without her knowing anything I was doing.  And I did it with other people, not her.

(Tr. Plea Hr'g, # 520, at 25.)  The plea was rejected as to the money-laundering and firearm charges faced by Kirt King.  Id., at 43.

The undersigned proposes that the presiding District Judge **FIND** that neither Mr. Perry nor Mr. Hively denied Defendant effective assistance of counsel with respect to the motion to sever and their performance was well within the wide range of reasonably competent assistance.

### Ground five: Prosecutorial misconduct

Defendant claims that the prosecution engaged in misconduct by threatening, and then seeking and obtaining a superseding indictment against Defendant, with a forfeiture provision, in retaliation for Kirt King's refusal to plead guilty.  (# 547, at

16

23).   She  complains  that  Mr.  Perry  failed  to  present  these allegations  to  Judge  Goodwin  in  support  of  the  motion  for severance.   Id.   Defendant  points  to  the  affidavits  signed  by herself  and  Kirt  King,  (# 547-2,  Exs.  2  and  22),  and  the  trial testimony  of  Sherman  King  as  evidence  in  support  of  her contentions.   Id.

The  response  of  the  United  States  is  as  follows:  "[T]here  is no  evidence  whatsoever  that  the  Government  acted  improperly  in  any manner.   The  government's  decision  to  seek  an  indictment  against defendant  was  based  on  the  overwhelming  evidence  against  her,  not of  [sic]  the  basis  of  Kirt  King's  refusal  to  sign  a  plea agreement."   (# 564,  at  7-8.)

Defendant  asserts  that  the  government's  response  is  a  material misrepresentation  to  the  Court.   (# 577,  at  9.)   She  reiterates that  both  she  and  Kirt  King  have  submitted  affidavits  in  support  of their  position.   Their  affidavits  (which  are  signed  under  penalty of  perjury  pursuant  to  28  U.S.C.  § 1746)  state  as  follows:

> 5.  [A]fter  I  was  arrested,  I  was  informed  by  my attorney  that  the  Assistant  U.S.  Attorney  had  instructed him  to  relay  a  message  to  me,  i.e.,  that  unless  I  agreed to  plead  guilty  to  the  one-count  indictment,  and  agree  to assist  the  government  in  the  prosecution  of  my  co-defendants  and  others  I  may  know,  the  United  States  was going  to  file  a  Superseding  Indictment  charging  me  with additional  crimes,  and  that  one  of  the  new  counts  would also  charge  my  mother  for  money  laundering.   In  fact, according  to  my  attorney,  unless  I  plead  guilty  and cooperated,  the  government  was  going  to  put  my  mom  away for  a  long  time  and  take  all  of  her  houses.

> 6.   After  receiving  this  information  from  my

17

attorney, I informed my mom about it and asked her what I should do.  My mom told me to do what I though[t] was right.  More specifically, she told me that she had done nothing wrong so I shouldn't plead guilty just to protect her.  My mom also told me that the government had made the same threats to my brother, Sherman King.

7.  After discussing it with my attorney, who informed me that I should not plead guilty, I decided to proceed to trial.  Following that decision, a Superseding Indictment was returned which included Count Sixteen, i.e., an allegation that I conspired with my mom to launder money.  Notably, because my brother decided to plead guilty, he was not charged in Count Sixteen.

8.  After the Superseding Indictment was returned, I told my attorney, my mom, and her attorney, that I was willing and, in fact, wanted to testify in my mom's defense.  Had I been allowed to do so, I would have told the jury that my mom knew nothing about my activities and had no involvement in those activities.  Moreover, I would have told the jury that I never gave my mom any proceeds from any illegal drugs, nor have I or anyone else ever used her house to make, store, package, or sell drugs, nor to store illegal money.  In addition, I would have testified that my mom had worked two (2) jobs almost my whole life just to buy her rental houses, and that she had done all the repairs/remodeling of those houses by herself, except for help from my brother and myself.  In sum, I would have told the jury the truth, i.e., that my mom was not guilty of money laundering or conspiring to launder money.  Finally, I would testify to the same in any proceeding or trial.

(# 547-2, Ex. 2, affidavit of Kirt King, ¶¶ 5-8, at 12-14.)

Defendant's affidavit recites basically the same information.

[F]ollowing the arrests of my sons, both of them told me that they had been told that unless they agreed to plead guilty and help the government, the Ass. U.S. Attorney was going to charge them with additional charges and charge me with laundering drug money.  In addition, both of them told me that unless they cooperated I would be going to prison for a long time and that the government was going to take all my properties.  I told both Kirt and Sherman that they did not have to plead guilty on my account because I had done nothing wrong.

(# 547-5, Ex. 22, affidavit of Lois King, ¶ 3 at 9.)  Defendant has
not submitted any declaration from Kirt King's attorney.

In <u>Bordenkircher v. Haynes</u>, 434 U.S. 357 (1978), the Supreme
Court held that it is not a violation of due process for a
prosecutor to carry out a threat made during plea negotiations to
have the accused reindicted on more serious charges on which he is
plainly subject to prosecution if he does not plead guilty to the
offense with which he was originally charged.  In <u>United States v.</u>
<u>Goodwin</u>, 457 U.S. 368 (1982), the Court held that a presumption of
prosecutorial vindictiveness was not warranted when a defendant was
indicted and convicted of a felony arising out of the same incident
for which he had been charged with a misdemeanor, where there was
no actual evidence of vindictiveness.

> A prosecutor should remain free before trial to exercise
> the broad discretion entrusted to him to determine the
> extent of the societal interest in prosecution.  An
> initial decision should not freeze future conduct. As we
> made clear in *Bordenkircher*, the initial charges filed by
> a prosecutor may not reflect the extent to which an
> individual is legitimately subject to prosecution.

457 U.S. at 382.

The Fourth Circuit has issued similar rulings based on
<u>Bordenkircher</u> and <u>Goodwin</u>.  In <u>United States v. Williams</u>, 47 F.3d
658, 662 (4th Cir. 1995), the court ruled that

> a prosecutor, in the context of plea negotiations, may
> threaten a defendant with a more severe prosecution and
> carry out those threats if the defendant refuses to
> cooperate with the police in the criminal investigation
> of another person.  A defendant's cooperation with the
> police is a legitimate concession for a prosecutor to

> seek during plea negotiations. * * * If it is
> constitutionally permissible to use the threat of more
> severe punishment to encourage a guilty plea, certainly
> it is legitimate to use the same tactics to encourage a
> defendant to cooperate with the authorities in the
> criminal investigation and prosecution of another.

In <u>United States v. Wilson</u>, 262 F.3d 305, 314-15 (4th Cir. 2001),
the court recited the requirements for showing prosecutorial
vindictiveness:

> [A] defendant must show, through objective evidence, that
> (1) the prosecutor acted with genuine animus toward the
> defendant and (2) the defendant would not have been
> prosecuted but for that animus. *See Goodwin*, 457 U.S. at
> 380 n.12, 20 S. Ct. 2485 (noting that the charges must be
> brought "solely to 'penalize' the defendant and could not
> be justified as a proper exercise of prosecutorial
> discretion"); *United States v. Sanders*, 211 F.3d 711, 717
> (2d Cir. 2000).
>
> If the defendant is unable to prove an improper
> motive with direct evidence, he may still present
> evidence of circumstances from which an improper
> vindictive motive may be presumed. * * * Because the
> presumption of vindictiveness must be applicable to all
> cases presenting the same circumstances, it will rarely,
> if ever, be applied to prosecutors' pretrial decisions.

The undersigned proposes that the presiding District Judge
**FIND** that Defendant has failed to show through objective evidence
that the prosecutor acted with genuine animus toward Defendant and
that she would not have been prosecuted but for that animus.  As
set forth in <u>Williams</u>, it is constitutionally permissible to use
the threat of more severe punishment to secure a guilty plea and to
obtain a defendant's cooperation in the investigation and
prosecution of another.  The presiding District Judge should
further **FIND** that Defendant's fifth ground for relief is without

20

merit, she suffered no prejudice, and thus she cannot satisfy the second prong of the Strickland test.

**Ground six: Testify in her own defense**
**Ground seven: Failure to investigate, call witnesses**
**Ground eight: Actual innocence**

Defendant complains that she repeatedly told Mr. Perry that she wanted to testify, but that Mr. Perry advised that she would not testify and that if she was not willing to follow his instructions, she should get another attorney. (# 547, at 25.) She asserts that she wished to present exhibits to demonstrate how she financed her properties and made repairs to them so as to demonstrate her innocence of money laundering. Id., at 26. She has submitted exhibits to establish that she purchased houses and cars through legitimate means. Id., at 28. Defendant states that she asked Mr. Perry to retrieve the financial records seized by the United States during a search of her residence, but he told her that some of the records had been lost and nothing could be done. Id., at 28-29. Perhaps her chief complaint is that Mr. Perry failed to present the documentary evidence which was available and which she believes would have exonerated her, notably evidence which proves how she purchased her properties and vehicles. Id., at 29-32.

Defendant's affidavit, Exhibit 22 to her § 2255 Motion, states as follows:

> 5. In June of 2004, my residence was searched and all my financial records were seized by the government.

21

Numerous times prior to and during my trial, I told Mr. Perry that I needed my financial records to show that I had not received any monies from Kirt, or anyone else, that was not completely legal.  When Mr. Perry finally showed me my documents, I discovered that my records for the years of 1999 and 2000 were missing.  As a result, I asked Mr. Perry to get those documents from the government because they were also needed to prove my innocence.  Mr. Perry, however, subsequently told me that the documents for 1999 and 2000 could not be found, and that both the U.S. Attorney's Office and the IRS denied having those records.

6.   Both prior to and during trial, I repeatedly told Mr. Perry that I wanted to present the financial documents I did have to the jury, so they could see that I legally obtained the monies to purchase and repair my properties, and to trade and buy the vehicles the government accused me of buying with drug money.  Mr. Perry assured me over and over that he would make sure that the jury would see these documents, because these records would "blow the government's case out of the water."  However, Mr. Perry never did.  After Mr. Perry rested my defense, I asked him why he had not used these records.  In response, Mr. Perry said we didn't need them and that they would only confuse the jury.

7.   Both prior to and during the trial, I told Mr. Perry that I wanted to testify in my defense, so I could tell the jury how and where I got the monies to purchase my properties and vehicles.  Prior to trial, Mr. Perry told me that there was no way that he was going to allow me to testify.  In fact, Mr. Perry told me that if I insisted on testifying that he would resign and I'd be left on my own to convince the Court to give me another attorney, which according to him the Court would not likely do.  During trial, I again expressed my desire to testify to Mr. Perry.  Specifically, I told him that in light of what the government's witnesses had said, I believed that I had to testify.  The day before Mr. Perry rested my case, he told me that he had changed his mind and was going to allow me to testify.  When that time came, however, Mr. Perry simply rested my defense without calling me to the stand.  When I asked Mr. Perry why he had not allowed me to testify, he told me that it was unnecessary because the government had not proven its case.  Notably, at no time did Mr. Perry ever inform me that the choice whether or not to testify was mine.  Had

> I been so informed, I would have insisted on testifying.
> Had I testified, I would have told the jury that I was
> innocent of Count Sixteen, and I would have explained how
> I got the monies to purchase my properties, how I
> performed almost all the repairs/remodeling myself, and
> how I was able to trade/buy the vehicles I was accused of
> buying with drug money.

(# 547-5, Ex. 22, ¶ 5-7, at 10-11.)

The United States did not respond to these claims other than to assert that they presented "overwhelming" evidence against Defendant.  (# 564, at 7.)

In her reply, Defendant notes the government's weak response, and asserts that the government's evidence against her was based only on inference.  (# 577, at 11.)  She contends that Exhibits 3-14 to her § 2255 motion establish that she had $195,655.84 in loans relating to the purchase and upkeep of her properties,[1] plus additional records which were lost by the United States.  Id., at 12.  Her point is that she had significant documentary evidence proving her innocence, but Mr. Perry chose not to present it, and not to allow her to testify.  Id., at 13.  Defendant argues that

> there is no plausible tactical or strategic reason that
> could justify Mr. Perry's decision to not submit the
> evidence presented herein; or to call the witnesses
> necessary to authenticate these documents; or to call Ms.
> King herself to testify.  Had Ms. King testified, the
> jury would have been made aware that Ms. King owned 1110
> 38th Street since 1985; that she had worked two jobs and
> remodeled 1110 38th Street herself to build equity; that
> she used her credit and credit cards to purchase other
> properties; and that she had received numerous and
> significant insurance settlements to help purchase her

_____

[1] Defendant amended her amount of indebtedness to the sum of $192,670.81.  (# 623.)

23

properties and vehicles.

Id., at 14.

The primary evidence presented by the United States against Defendant to prove her willful joinder in a conspiracy with her son Kirt King to launder his drug proceeds related to her purchase of the property at 1049 37th Street, Parkersburg, West Virginia (Kirt King's residence). Evelyn Moore, an accountant and tax preparer, testified that Defendant signed a land contract on March 21, 1997, to buy the property from William E. Brown, by paying $1,500 down, and the remainder in 118 monthly installments of $200 each. (Tr. Trial, # 305, at 164-65.) Ms. Moore stated that Defendant paid off the land contract in early October, 1999, by presenting Ms. Moore with $14,580.80 in cash, "fairly small bills rolled up and tied with rubber bands, . . . in a paper sack." Id., at 165-66. Ms. Moore joked with Defendant that the money looked like drug proceeds, although Defendant had claimed that the money was an insurance settlement. Id., at 167. Ms. Moore knew that an insurance settlement should be in the form of a check. Id.

Defendant's Exhibits submitted with her § 2255 motion mostly relate to other properties and vehicles, not 1049 37th Street. Exhibit 9 is a Parkersburg Utility Board refund request for the 37th Street property, is dated 2002, and is thus irrelevant. (# 547-3, at 12.) Exhibit 12 is a check from Municipal Mutual Insurance Company dated 2003 and purportedly also related to the

24

37th Street property, and is also irrelevant. Id., at 19.  None of these documents dispel the strong probative value of Ms. Moore's testimony that Defendant paid off the land contract on the 37th Street property in early October, 1999, with small bills in a paper sack.  Defense Exhibit 3, a receipt dated October 3, 1999, and signed by William E. Brown, does not diminish the strength of Ms. Moore's testimony, because Ms. Moore handled Mr. Brown's financial affairs.

The government presented evidence that Defendant reported modest income on her Federal income tax returns, yet acquired other properties and expensive vehicles which were titled in her name during the period 1997 to April, 2004.  Defendant claims that she purchased these other properties and vehicles by incurring debt.  Assuming that Defendant did incur debt in acquiring these properties, the fact remains that her cash pay-off of the land contract on the 37th Street property remains undisputed, and it alone is sufficient to support Defendant's conviction for money-laundering.  The court notes that the United States forfeited only one parcel of real estate: 1049 37th Street, which was the subject of an Agreed Order of Forfeiture and Release (# 588), and Final Order of Forfeiture (# 592).

It is apparent that Mr. Perry made a strategic decision not to present documentary evidence regarding the significant assets titled in Defendant's name, such as the Lincoln Navigator (which

was also forfeited with the 37th Street property by agreement).
Given the strength of the government's case against Kirt King with
respect to his chronic unemployment, drug trafficking and access to
expensive vehicles titled in his mother's name, Mr. Perry exercised
the better part of discretion to avoid the topic and to focus on
the lack of evidence of drug trafficking at Defendant's residence.

Defendant argues vehemently that she should have had the
opportunity to testify in her own behalf.  In a decision concerning
this issue, the Fourth Circuit held:

> . . . the advice provided by a criminal defense lawyer on
> whether his client should testify is "a paradigm of the
> type of tactical decision that cannot be challenged as
> evidence of ineffective assistance." Hutchins v.
> Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983), cert.
> denied, 464 U.S. 1065, 104 S. Ct. 750, 79 L.Ed.2d 207
> (1984); see also Jones v. Murray, 947 F.2d 1106, 1116 n.6
> (4th Cir. 1991)(reiterating principle that advice to
> testify is paradigmatic of strategic decision); Rogers-
> Bey v. Lane, 896 F.2d 279, 283 (7th Cir. 1990)(concluding
> that counsel's advice not to testify based in part on
> erroneous belief that defendant could be impeached by
> prior conviction, was not deficient performance); Reyes-
> Vejerano v. United States, 117 F. Supp.2d 103, 108-09
> (D.P.R. 2000)("Absent evidence of coercion, legal advice
> concerning the defendant's right to testify does not
> constitute [ineffective assistance of counsel]").

Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002).

After review of the transcript, it is apparent that Defendant
was vulnerable to cross-examination on several topics.  While many
defendants wish to take the stand and declare that all the
government's witnesses have failed to tell the truth, the tactic is
rarely successful and usually unpersuasive.

The undersigned proposes that the presiding District Judge **FIND** that Defendant's sixth, seventh and eighth grounds for relief are without merit, that she did not suffer any prejudice as a result of Mr. Perry's strategic decisions that she not testify and that he not present documents relating to transactions other than the 37th Street property, and that she is not actually innocent of money-laundering.

### Ground nine: <u>Brady</u> violation

Defendant asserts that her financial records for 1999 and 2000 were seized by Federal agents during the execution of a search warrant for her home and were lost.  (# 547, at 35.)  She argues that Mr. Perry was ineffective because he did not file a motion relating to the government's alleged withholding of the 1999 and 2000 documents.  <u>Id.</u>, at 37.  She contends that "this evidence would have rebutted the government's entire theory of prosecution." <u>Id.</u>

The government's response states:

> Numerous financial records were obtained from defendant as a result of a search of her home.  After a review of those records, agents from the Internal Revenue Service determined that they were of no evidentiary value. Therefore, all records obtained were returned in their entirety to defendant's trial counsel weeks prior to trial.

(# 564, at 8.)

Defendant's reply states: "The problem, of course, is that either the government's unverified assertions are not true, or Mr.

27

Perry falsely told Ms. King that the government had not returned them." (# 577, at 16.)

Defendant has failed to identify any specific documents which she claims were withheld to her prejudice. The court notes that the documents concerning the 1999 pay-off of the 37th Street property land contract which were admitted into evidence were available from other sources, such as the bank and the Wood County Clerk's office. In fact, purchases of real estate and vehicles are typically accompanied by extensive documents which are maintained by third parties. In the absence of any specifically named missing documents, the court cannot determine whether such documents could have been obtained from another source. While the United States should have buttressed its position with a declaration from an agent responsible for the documents seized from Defendant's home, Defendant has failed to show that any material evidence was purposefully withheld or carelessly lost, and that she suffered any prejudice.

The undersigned proposes that the presiding District Judge **FIND** that Defendant was denied effective assistance of counsel with respect to whether all of her documents were returned to her by the United States after their review was complete.

### Ground ten: Petition for writ of certiorari

In this claim, Defendant contends that she was denied effective assistance of appellate counsel because she requested Mr.

Hively to file a petition for a writ of certiorari, he did not do so, and he did not tell her that he was not going to do so, thus depriving her of the opportunity to file a petition *pro se*.  (# 547, at 38-42.)

The government's response contends that Mr. Hively's responsibility ended with the appeal.  (# 564, at 12.)

Defendant's reply correctly disputes the government's position.  (# 577, at 16-17.)

The record reflects that Mr. Hively sent a letter dated August 21, 2006, to Defendant, enclosing the Fourth Circuit's decision affirming her conviction and sentence and advising her of the period in which to file a petition for a writ of certiorari with the Supreme Court.  (# 564-2.)  The letter reads as follows:

> Please find enclosed a copy of the Fourth Circuit decision denying your appeal.  Pursuant to Rule 13 of the Rules of the Supreme Court of the United States, you have 90 days from July 20, 2006 to file your Writ of certiorari with the United States Supreme Court.  Please note however I do not believe that avenue would be successful.  It is extremely difficult for the United States Supreme Court to review it.  However, I believe your most effective route would be to file a Writ of Habeas Corpus.  This will allow you to argue directly ineffective assistance of your trial counsel.  As you will read in the opinion, that is what the Court suggests.  Please write if you have any questions.
> /s/ Herbert L. Hively, II

<u>Id.</u>

By letter dated September 11, 2006, Defendant replied to Mr. Hively, asking, "Why not do a writ of certiorari?  I understand it will keep my direct appeal rights.  Isn't a writ of habeas corpus

a last option?" (# 547-5, Ex. 19.)  There is nothing in the record

to indicate that Mr. Hively responded to this letter.

By letter dated September 29, 2006, and sent certified mail,

Defendant wrote to Mr. Hively again, advising,

> With help from my family, I have decided to file a
> writ of certiorari to the U.S. Supreme Court.  My money
> laundering sentence was imposed in violation of my 6th
> amendment rights.  I request my case be remanded in light
> of Cunningham v. California for resentencing.  Also if
> this writ requires me to go out to court, I want to do it
> via video.

(# 547-5, Ex. 20.)   There is no indication that Mr. Hively

responded to this letter.

On November 16, 2006, Defendant wrote to the "Office of the

Clerk" (it is not clear of which court), asking if Mr. Hively had

filed a petition for a writ of certiorari, as she had not received

one from him, nor an answer to her letters.  Id., Ex. 21.

By letter dated February 6, 2007,[2] to the Clerk of this court,

Defendant stated that "Mr. Hively failed to file a petition for a

writ of certiorari to the Supreme Court after my direct appeal was

denied, even though I specifically instructed him to do so."  (#

529.)

In the unpublished decision in United States v. Smith, No. 07-

6358, 2008 WL 4951657 (4th Cir. Nov. 19, 2008) (attached to this

Proposed Findings and Recommendation), the Fourth Circuit

---

[2]  The court notes that the return address of this letter indicates it
was sent by Kirt King at FCI Ashland, KY.  The signature does not resemble the
signatures of Lois King on other documents received from her.

indicated the appropriate remedy in similar circumstances to the instant case, and declined to consider whether appellate counsel was ineffective.  When appellate counsel has violated his duty under the CJA Plan to file a petition for certiorari requested by his client, or to file a motion to withdraw so that the client has adequate time in which to file a petition *pro se*, the Fourth Circuit will consider a motion to recall the mandate, to re-enter judgment, and to re-start the period of time within which to file a petition.  Smith, 2008 WL 4951657 *3.  The court notes that the September 29, 2006 letter from Defendant to Mr. Hively is sufficiently ambiguous that it is possible that he understood Defendant to be advising him that she was going forward with filing the petition *pro se.*  Her subsequent letters clarify that she thought he would file the petition.

Based on the Smith case, the undersigned proposes that the presiding District Judge **FIND** that the District Court has no authority to recall the mandate of the Fourth Circuit.  Defendant must file a motion to recall the mandate with the Clerk of the Fourth Circuit.

### Ground eleven: Unreasonable sentence

Defendant was sentenced on April 25, 2005 (# 347).  The presentence report ("PSR") computed her guideline sentence as follows:

24.  **Base Offense Level:** The guideline for this offense is found at U.S.S.G. § 2S1.1.  The amount of monetary

31

value of the funds laundered by the defendant for which
the government is seeking forfeiture is more than
$30,000. Pursuant to the provision the base offense
level is fourteen. U.S.S.G. §§ 2S1.1 and 2B1.1(b)(1)(D).

25. **Specific Offense Characteristic:** If the base offense
level is established pursuant to U.S.S.G. § 2S1.1(a)(2),
*and* the defendant knew or believed that any of the
laundered funds were the proceeds of an offense involving
the distribution of controlled substances, the offense
level is increased by six. U.S.S.G. § 2S1.1(b)(1).

26. **Specific Offense Characteristic:** If the defendant is
convicted under 18 U.S.C. § 1956, two levels are added.
U.S.S.G. § 2S1.1(b)(2)(B).

(PSR, ¶¶ 24-26, at 8.) No other adjustments were made to the

offense level, so Defendant's Total Offense Level was 22. With a

Criminal History Category of I, Defendant was sentenced at the

bottom of the guideline range of 41-51 months.

Defendant argues that her sentence "was based on and increased

by facts not included in the charging instrument, proven beyond a

reasonable doubt, or admitted to in any knowing or voluntary manner

by Ms. King." (# 547, at 42.) Thus, she asserts that her Fifth

and Sixth Amendment rights were violated. She contends that her

attorney was ineffective for not raising this challenge to her

sentence. Id., at 44. Even if her attorney was not ineffective,

Defendant claims that her sentence violated her constitutional

rights. Id., at 47.

The United States responds that this argument was raised in

Defendant's direct appeal and cannot be raised again on collateral

attack (# 564, at 2-3, 5).

The Fourth Circuit upheld Defendant's sentence.

> King's first claim on appeal is that her sentence is unreasonable. After the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005), a sentencing court is no longer bound by the range prescribed by the sentencing guidelines. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). However, in determining a sentence post-*Booker*, sentencing courts are still required to calculate and consider the guideline range prescribed thereby as well as the factors set forth in 18 U.S.C. A. § 3553(a)(West 2000 & Supp. 2005). *Id.* We will affirm a post-*Booker* sentence if it is both reasonable and within the statutorily prescribed range. *Hughes*, 401 F.3d at 546-47.

> As King's forty-one month prison sentence was within the properly calculated sentencing guideline range of 41 to 51 months' imprisonment, it is presumptively reasonable. *United States v. Green*, 436 F.3d 449, 457 (4th Cir.), *cert. Denied*, 547 U.S. 1156, 126 S. Ct. 2309, 164 L. Ed.2d 828 (2006). King has not rebutted that presumption as the district court appropriately treated the guidelines as advisory, calculated and considered the guideline range, and weighed the relevant § 3553(a) factors.

King, 199 Fed. App'x at 253.

The undersigned proposes that the presiding District Judge **FIND** that Defendant raised the reasonableness of her sentence on direct appeal and cannot raise it again on collateral review.

It is respectfully **RECOMMENDED** that Defendant's § 2255 motion be denied.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED,** and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the United States Attorney, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Defendant and to counsel of record.

June 5, 2009
Date

Mary E. Stanley
United States Magistrate Judge